## In re LIPHART.

(District Court, E. D. Virginia.   October 15, 1915.)

1. GIFTS ⚖️53—GIFTS CAUSA MORTIS—ELEMENTS.

A gift causa mortis must be of personal property, must be made in the last illness of the donor, while under the apprehension of death as imminent, and subject to the implied condition that if the donor recover of the illness, or if the donee die first, the gift shall be void, and possession of the property must be delivered at the time to the donee, or some one for him, and the gift must be accepted by the donee.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 104; Dec. Dig. ⚖️53.]

2. GIFTS ⚖️82—GIFTS CAUSA MORTIS—SUFFICIENCY OF EVIDENCE.

Each element of a gift causa mortis must be established by the most cogent proof, and such as to leave no doubt as to the character of the transaction.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 154, 155; Dec. Dig. ⚖️82.]

3. GIFTS ⚖️82—GIFTS CAUSA MORTIS—SUFFICIENCY OF EVIDENCE.

Within the rule that the evidence, to establish a gift causa mortis, must be clear and convincing, evidence *held* insufficient to show that a bankrupt's wife, during her last illness, made a gift of her furniture and jewelry to her infant son.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 154, 155; Dec. Dig. ⚖️82.]

4. WILLS ⚖️90—GIFTS CAUSA MORTIS—TESTAMENTARY LANGUAGE.

A bankrupt's wife, who died immediately following a surgical operation, told the bankrupt, before the operation, that her furniture and her jewelry was to go to her son, and that certain articles were to go to her mother and brothers, and a brother of the bankrupt. It appeared that her desires with regard to her mother and brothers and the bankrupt's brother had not been complied with, but that the bankrupt had listed the property for taxation in his own name, and stored it, or some of it, in his mother's name, though he was his son's duly qualified guardian, and that he had described the property as his in a lease. *Held*, that the facts did not show a gift, either to the son or the other alleged donees; the wife's language being at most of a testamentary character, which will not support a gift causa mortis.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 219; Dec. Dig. ⚖️90.]

In the matter of C. M. Liphart, bankrupt.   Upon the petition of C. M. Liphart, as natural guardian and next friend of C. G. Liphart, an infant son under the age of 14 years and a party to this proceeding, to review the referee's ruling as to the title to certain personal property.   Ruling approved.

The opinion of Referee Thomas B. Snead was as follows:

The property which is the subject of this controversy consists of certain household effects which formerly belonged to the bankrupt's wife, the late Mrs. Eula Liphart, and it appears that just before her death, which occurred May 3, 1910, and immediately following a surgical operation which she had undergone, Mrs. Liphart, while in the operating room awaiting said operation, stated to her husband what disposition she desired made of this and other personal property, which had been given her by her relatives and friends, in the event that she should die.   She requested that her jewelry and

furniture be given her son, that certain articles of silverware, which had been given her by her brothers, be returned to them, and that certain other articles be given to other relatives. It further appears that, for a number of years prior to her death, Mrs. Liphart had been in ill health, and that upon other occasions she had expressed the desire that her son should have her property at her death. She had previously expressed such a desire to her brother-in-law, R. P. Liphart, and had also stated to both the nurse and physician, who attended her in her last illness, and for some time before her death occurred, that she desired her son to have her property at her death, and it further appears that the statement made by Mrs. Liphart to her husband, as to what disposition she desired made of her property, was made in periculo mortis, and that she died shortly after said operation. At the time of Mrs. Liphart's death, the property in question was located upon premises No. 1617 Park avenue, where the bankrupt and his family then resided, and it appears to have remained in the bankrupt's possession and control ever since. Subsequent to bankruptcy, the bankrupt's trustee was approached by Mrs. Liphart's father and one of her brothers, who stated to the trustee that it was their desire to purchase the property which had belonged to Mrs. Liphart, for sentimental reasons. On September 29, 1913, this property was stored in the warehouse of W. Fred Richardson, Incorporated, partly in the name of the bankrupt, and partly in the name of his mother. It appears that the bankrupt intended to have all the property, claimed to be his son's, stored in his mother's (Mrs. C. E. Liphart's) name, and his own stored in his name; but, through some mistake upon the part of the warehouseman, the two lots became commingled, and some of each lot was stored in the bankrupt's name, and some in his mother's name. A full and complete list of the property claimed to belong to the bankrupt's son is set out in the petition filed by the bankrupt as guardian and next friend of his son, and each article and parcel thereof is referred to by number.

[1, 2] As I understand, the only question to be decided here is whether the evidence in this matter establishes a gift causa mortis, upon the part of the decedent, the bankrupt's wife, to her son, of the property which is the subject of this controversy, and I am of opinion that it does not establish such a gift. Commenting upon this method of disposing of personal property between donor and donee, the Court of Appeals of Virginia, in Johnson v. Colley, 101 Va. at page 416, 44 S. E. at page 722, 99 Am. St. Rep. 884, lays down the following as being the essential attributes of a gift causa mortis: "(1) It must be of personal property; (2) the gift must be made in the last illness of the donor, while under the apprehension of death as imminent, and subject to the implied condition that if the donor recover of the illness, or if the donee die first, the gift shall be void; and (3) possession of the property given must be delivered at the time of the gift to the donee, or to some one for him, and the gift must be accepted by the donee." Not only is this view in thorough accord with those expressed in a long line of decisions, both in this country and in England, but, wherever it has been attempted to establish a gift causa mortis, the courts have been inclined to scrutinize closely all of the attending circumstances and to allow such gifts only upon the clearest and most convincing proof. Thomas' Administrator v. Lewis et al., 89 Va. 1, 15 S. E. 389, 18 L. R. A. 170, 37 Am. St. Rep. 848; Miller v. Jeffress, 4 Grat. (Va.) 472; Yancy v. Field, 85 Va. 761, 8 S. E. 721; Spooner v. Hilbish, 92 Va. 341, 23 S. E. 751; Basket v. Hassell, 170 U. S. 602, 2 Sup. Ct. 415, 27 L. Ed. 500; Hitch v. Davis, 3 Md. Ch. 266; Waite v. Grubbe, 43 Or. 406, 72 Pac. 206, 99 Am. St. Rep. 764; Drew v. Hagerty, 81 Me. 231, 17 Atl. 63, 3 L. R. A. 230, 10 Am. St. Rep. 255; Cyc. Vol. 20, 1228; Jones' Adm'r v. Irvin, 4 Va. Law Reg. 526. Furthermore, not some, but all, of these elements must be present, and each must be established by the most cogent proof, and such as to leave no doubt as to the character of the transaction; for to require a less rigid rule of proof, as said in Miller v. Jeffress, 4 Grat. (Va.) 480, "would introduce in such cases all the mischiefs of fraud, perjury, and surprise, which the law seeks, as far as practicable, to guard against."

[3, 4] I am of the opinion that the requirements of the law have not been met in this case. The evidence depended upon to establish a gift causa

mortis is neither clear and convincing, nor such as to leave no doubt as to the character of the transaction. The bankrupt, at pages 72, 73, of his deposition, upon being asked what his wife said about what disposition she desired made of her property, testified as follows: "She made frequent requests of me what she wanted done with her property and personal things. Her last request was when she was taken to the hospital, a short while before she was operated upon, when the nurse and doctor and myself were together. She asked the nurse and doctor to go out of the room into the antiseptic room there, as she wanted to have a talk with me; and in her talk with me she told me she had been sick a long while, and that she knew I was worried about the enormous expense, and she wanted to help me, and I told her I was able to stand the expense better than I ever was; that if I needed any help, and she could help me, she would be the first that I would go to. So she told me that she had everything to live for and nothing to die for, and if it was God's will for her to die it was all right with her. And she told me what she wanted me to do with the various things she had which were given to her, some by her mother and by her father, and my mother and my father, her brothers and her friends, and gave me detailed information what I should do, should she die, and asked me whether I would carry out her wishes. I promised her I would, and I have to the best of my knowledge and belief. Her furniture, her jewelry, was to go to her son. I was to keep a home for him, educate him, and bring him up to be a good man. Certain silverware articles, which one of her brothers had given to her, were to be returned to him. Her personal apparel was to go to her mother, to be distributed as she saw fit and best. Certain articles which my brother had given to her were to be returned to my brother, and various other little requests which I cannot just think of; but they were all complied with promptly by me. I kept a home for my son as long as I was able to, up until I think the last of October. I stored this furniture with permission of Eppes & Eppes in Richardson's Storage Warehouse, after consulting with them first in regard to the matter, and they wrote me, and I replied. That was the last request Mrs. Liphart made of me, as she was practically unconscious from that time until she died. This request she had made to various other people, not in the way she told me, but that what she had was to go to my boy and her son."

While it is true that the bankrupt's statement is in a way corroborated by the testimony of the physician and nurse, who attended Mrs. Liphart in her last illness, as well as by that of the bankrupt's brother, R. P. Liphart, all three of whom stated, in substance, that they had heard Mrs. Liphart express the desire that her property should go to her son upon her death, viewing the statements, purported to have been made by Mrs. Liphart, in the light of the language used by the court in the case of Miller v. Jeffress, supra, it is clear to my mind that the same are merely testamentary; and mere testamentary declarations upon the part of the donor, unaccompanied by delivery of the property, will not sustain a gift causa mortis. There must be a delivery of the property to the donee, or some one for him, at the time of the gift, and the title, though a defeasible one, must vest as of the time of the gift; otherwise the donor's declarations will be considered as testamentary only. Thomas' Administrator v. Lewis et al., 89 Va. 1, 15 S. E. 389, 18 L. R. A. 170, 37 Am. St. Rep. 848.

The evidence under consideration in Miller v. Jeffress was as follows:

"We, the undersigned, do hereby certify that Paschal Fowlkes, during his illness of body, but of a sound mind, said that he wished his nephew L. Fowlkes to have two thousand dollars out of his estate, and that his friend Edward T. Jeffress should have all the bonds of his in his possession. As witness and given under our hands and seals, this 20th day of December 1828.

"[Signed] Ephraim Waller. [Seal.]

"George M. Fuqua. [Seal.]

his

"John X Overstreet. [Seal.]"

mark

And, commenting upon the same, the court said, among other things: "The facts as set out in the certificate, and I may add as proved by the witnesses,

satisfy me that the decedent had no idea at the time of parting with all dominion over the subject. When a man in his last illness attempts to dispose of his property, it is prima facie a testamentary act, unless the contrary be clearly shown. So far from that being the case here, the words themselves import a future benefit. 'That his friend Edward T. Jeffress should have all the bonds of his in his possession' imply, not a present donation, but a future enjoyment. The words were also used in connection with other words and declarations uttered and made about the same time, and all of which look to dispositions to take effect at the death of the testator by way of last will and testament. There is nothing whatever to distinguish this from the other attempted bequests, except that, in describing the thing attempted to be bequeathed in this instance, it was referred to as being in the possession of the intended legatee.''

So it must be said of the language Mrs. Liphart is purported to have used upon the occasion of her last illness. It shows that she was undertaking to dispose of her property to several persons, that certainly some of the bequests were not to take effect until after her death, and that none of the intended gifts were accompanied by a delivery of the property which she was seeking to dispose of. In fact, as far as I can see, nothing can be gathered from the language Mrs. Liphart is purported to have used, which would distinguish the gift to her son from those she intended to make to her other relatives, except that the articles were different in character.

In addition to the fact that the language, purported to have been used by Mrs. Liphart, is not sufficiently clear to establish a gift causa mortis, the surrounding circumstances would appear to absolutely negative any such idea. Although the bankrupt states that it was his wife's desire that her mother and brothers and his brother should be the recipients of certain articles which they had given her as presents, there is no evidence to the effect that the bankrupt ever complied with any such request, except his own naked statement, "I promised her I would, and I have to the best of my knowledge and belief;" whereas, on the contrary, there is considerable evidence tending to show that he never did any such thing. Mrs. Liphart's father, J. H. Valentine, when called to testify in regard to this matter, stated, in substance, that while, whenever he gave his daughter anything, he tried to impress upon her that he desired his grandchild to have such things at her death, he never heard her say what disposition she desired made of her property, and not only was Mr. Valentine unable to relate any conversation which had occurred between his daughter and himself concerning a disposition of her property, but it affirmatively appears that, subsequent to the intervening of bankruptcy, he and one of his sons approached the trustee with a view to buying the very things they had given his daughter, "for sentimental reasons," as they stated, showing that they had no idea that Mrs. Liphart had undertaken to make any such disposition of her personal effects as it is here sought to establish was her intention. And these are not the only countervailing circumstances which appear in this matter. It also appears that the bankrupt stated, in the lease upon the premises he occupied just prior to this bankruptcy, that this was his property, and that subsequent to his wife's death he listed the same for taxation in his own name, and stored it, or some of it, in his mother's name, when, as he states, he was the duly qualified guardian of his son. And such circumstances as these, instead of tending, as they should, to strengthen the bankrupt's statement as to what disposition his wife intended to make of her property, have just the opposite effect.

To recapitulate, as I understand the law, such a gift must be complete within itself; that is to say, the donor must, in her lifetime, and in anticipation of death, have actually made a gift of the property to the donee, to be defeated only in event of the death of the donee, or of the survival of the donor of the particular illness. And the language used, in respect to none of the gifts under consideration, was such as would constitute a good gift causa mortis. No such words as Mrs. Liphart is reputed to have used, whether as respects the 'alleged gift to her son, or to the other members of her family, indicating merely how she desired her husband to dispose of her estate after her death, will suffice. Such language was, at best, of a testa-

mentary character only, and but an oral declaration of the disposition she desired should be made of her property after her death.

George A. Hanson, of Richmond, Va., for guardian and next friend. Haw & Haw, of Richmond, Va., for trustee.

WADDILL, District Judge. The ruling of the referee as set forth in the foregoing is approved, and his opinion is adopted as that of the court.

Let order be entered accordingly.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes